## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

KEVIN E. SNIDER,

      Petitioner,

    v.

STATE OF MARYLAND and
MARYLAND ATTORNEY GENERAL,

      Respondent.

Civil Action No. TDC-20-1910

### MEMORANDUM OPINION

Self-represented Petitioner Kevin E. Snider, currently incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he challenges the validity of his convictions and sentence in the Circuit Court for Baltimore County, Maryland, for second degree rape and related charges arising from the sexual abuse of his stepdaughter. The Petition is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. D. Md. Local R. 105.6; Rules 1(b) and 8(a), Rules Governing Section 2254 Cases in the United States District Courts. For the reasons set forth below, the Petition will be DENIED.

### BACKGROUND

**I.      Convictions and Sentence**

On May 6, 2016, a jury in the Circuit Court for Baltimore County found Snider guilty of one count of second degree rape, three counts of sexual abuse of a minor, one count of second degree sexual assault, two counts of second degree sexual offense, two counts of third degree sexual offense, three counts of fourth degree sexual offense, and two counts of second degree

assault. On direct appeal, the Court of Special Appeals of Maryland, now known as the Appellate Court of Maryland ("the Appellate Court"), found the following facts to have been established as trial.

At trial, C.M., the alleged victim of these offenses, testified that Snider began sexually abusing her when she was four years old. Snider, who was her stepfather, married her mother in 2000, when she was three years old. C.M. lived with her mother, her older sister, and her younger brother in a row house in Baltimore County. In 2000, Snider moved into the home with two of his three daughters from a previous marriage. The first incident of abuse occurred when C.M.'s mother was at work and the family's other children were at school. While C.M. and Snider were watching television in the living room, Snider touched her vagina and played with his penis while touching her. Approximately one or two weeks after the first incident, Snider entered C.M.'s bedroom while she was still awake, got under the blankets, and started touching her vagina while he touched his penis. Similar incidents occurred on an approximately weekly basis when no one else was home with C.M. and Snider.

C.M. testified that at times Snider told her to stay home from school, claiming that she was not feeling well, so he could engage in similar sexual activity. When C.M. was approximately seven or eight years old, Snider picked her up early from school, took her home, and had her perform oral sex on him, after which Snider told C.M. not to tell anyone what had happened. C.M. testified that Snider put his penis in her mouth frequently, particularly during time periods when she was not sharing a bedroom with Snider's daughters.

C.M. further testified that when C.M. was 11 years old, Snider pulled her out of school early, took her home, and while in the basement, took her pants off and put his penis into her vagina while he held her down and covered her mouth. Snider told C.M. not to tell anyone what

2

had happened. According to C.M., following this incident, Snider touched her and had sexual intercourse with her at least once a week.

When C.M. was 13 or 14 years old, she and her brother were pulled out of school to be homeschooled. C.M.'s mother testified that C.M. was homeschooled because she was missing a lot of school and not doing well. At one point, Snider started screaming at C.M. and her brother, so they went into C.M.'s bedroom and locked the door, but Snider broke in and started punching C.M. in the sides. When C.M. told her mother what happened, her mother made plans to move out and then divorced Snider. C.M. testified that she did not tell her mother about the sexual abuse because she thought her mother would have killed Snider and that she did not want to lose her mother.

After the divorce, C.M. began attending high school. She usually walked home with her friend, Monica Thomas. At some point, Snider began following them in his vehicle as they walked home, causing CM. to grab her friend's hand and run home. Thomas testified that C.M. told her that Snider had touched and abused her in sexual ways, that he physically hit her, and that these things always happened in her home.

C.M.'s mother testified that in the spring of 2011, C.M. was crying a lot, cutting herself, screaming a lot, and pounding her fists, but she refused to see a doctor and did not want to talk to a therapist. During ninth grade, C.M. dropped out of high school and went to live with her biological father in Florida and stayed for approximately two years. C.M. testified that she moved to Florida because Snider had been following her.

When she was 16 years old, C.M. moved back to Maryland and lived with her mother, her mother's new husband, and her brother. She got a job at a local McDonald's restaurant. On one occasion, C.M. went outside to deliver a drive-thru order to a customer and saw that the customer

3

was Snider. She threw the food at him, ran back into the restaurant, and began crying. The McDonald's manager, Sherry Majka, testified that she tried to calm C.M. down, and that C.M. told her that the customer was someone who had committed abuse against her. Because Snider returned to the McDonald's on other occasions, C.M. quit her job.

While C.M. was still working at McDonald's, she began experiencing pain in her legs and hips. When she woke up one day unable to sit up or walk, she was hospitalized, diagnosed with psychosomatic pain, and referred to a therapist. C.M. told the therapist about Snider's abuse of her, and the therapist reported it. C.M. testified that she took medication for post-traumatic stress disorder, anxiety, and depression because of what Snider had done to her.

After the therapist's report, C.M. was interviewed by social services and by Detective David Maranto of the Baltimore County Police Department. C.M. told an interviewer at the Child Advocacy Center that, when she was 12 years old, after Snider had been having sex with her three to four times per week, she stopped getting her period and thought she was pregnant. Snider got mad at her, hit her, and punched her in the stomach, causing her to bleed for two months.

One of Snider's daughters, J.S., who is about six years older than C.M., testified for the defense. She testified that she lived with Snider from when she was seven years old until she was 16 years old; that during that time period, she, her sister, and C.M. shared a bedroom; and that every other weekend, Snider's other daughter also stayed in the girls' bedroom. J.S. testified that C.M. rarely left school early because she was sick, and that when she did, her mother picked her up. J.S. testified that Snider never picked up C.M. from school and never stayed at home with her when she was sick because his work schedule was not as flexible as that of C.M.'s mother.

On August 10, 2016, the court sentenced Snider to a total term of imprisonment of 80 years. The court informed Snider that he had the right to seek a review of his sentence by a three-judge

panel but noted that because the sentence was not the maximum possible sentence, there was a risk that the sentence would be increased.

## II.    Direct Appeal

Snider filed a direct appeal in which he asserted two errors: (1) that the trial court excluded evidence of the victim's prior accusations of rape against two other individuals; and (2) that the evidence was insufficient to sustain his conviction. On May 8, 2018, the Appellate Court affirmed the convictions and sentence. Snider filed a Petition for a Writ of Certiorari to the Court of Appeals of Maryland, now the Supreme Court of Maryland. On August 31, 2018, that petition was denied.

## III.   State Post-Conviction Proceedings

On September 5, 2018, Snider filed a self-represented State Petition for Post-Conviction Relief in the Circuit Court for Baltimore County ("the Circuit Court") pursuant to the Maryland Uniform Post-Conviction Procedure Act, Md. Code Ann., Crim. Proc. §§ 7–101 to 7–204 (West 2018). On April 30, 2019, Snider, through appointed counsel, filed an Amended Petition for Post-Conviction Relief. The Petition as amended ("the State Petition") asserts that Snider's trial counsel was ineffective based on the following acts or omissions: (1) failing to properly cross-examine the victim at trial; (2) failing to object to a comment by the trial judge to the jury prior to deliberations; (3) failing to object to hearsay testimony from four witnesses; (4) failing to object to the victim's lay opinion testimony about the use of drugs; (5) failing to object to testimony relating to alleged prior bad acts; (6) failing to object to Juror No. 119; (7) failing to properly investigate the allegations against Snider and to present an adequate defense; (8) failing to consult with Snider about whether to file an application for review of the sentence by a three-judge panel; and (9) committing cumulative errors.

On July 19, 2019, the Circuit Court held a post-conviction hearing during which Snider and his trial counsel both testified. On December 4, 2019, the Circuit Court denied the State Petition. In its written opinion, the Circuit Court discussed all of the identified issues except for the claim based on trial counsel's alleged failure to cross-examine the victim.

On January 6, 2020, Snider filed with the Appellate Court a self-represented Application for Leave to Appeal the Denial of Post-Conviction Relief. On April 14, 2020, the Appellate Court summarily denied Snider's Application.

## DISCUSSION

Snider has now filed a Petition for a Writ of Habeas Corpus in this Court in which he asserts claims of ineffective assistance of counsel based on the following actions or inactions by his trial counsel: (1) failing to adequately cross-examine the victim at trial; (2) failing to object to a comment made by the trial judge to the alternate jurors prior to deliberations; (3) failing to object to apparent hearsay testimony from four witnesses; (4) failing to object to apparent lay opinion testimony about the use of drugs; (5) failing to object to testimony relating to alleged prior bad acts; (6) failing to object to Juror No. 119; (7) failing to properly investigate the allegations against Snider and to present an adequate defense; (8) failing to consult with Snider about filing an application for review of the sentence by a three-judge panel; and (9) committing cumulative errors.

In the Answer, Respondents contend that Snider's claim that his counsel was ineffective for failing adequately to cross-examine the victim is procedurally defaulted because he failed to include it in the State Petition. Respondents argue that the remaining claims lack merit and should be dismissed.

6

I.     **Legal Standards**

A.     **Petition for a Writ of Habeas Corpus**

A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a) (2018). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court adjudication is contrary to clearly established federal law under § 2254(d) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). The state court's application of federal law must be "objectively unreasonable." *Id.*

(quoting *Williams*, 529 U.S. at 409).  Furthermore, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted).  The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable.  *Id.*

### B.      Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. Const. amend. VI.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs:  deficient performance and prejudice.  *Id.* at 692.  First, the petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  Deficiency exists when "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms."  *Id.* at 688; *see Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  "Judicial scrutiny of counsel's performance must be highly deferential" and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*

Second, the petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair trial" whose result

8

was reliable. *Id*. at 687. To establish such prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## II.     Procedural Default

Respondents argue that Snider's claim that his trial counsel was ineffective for failing adequately to cross-examine the victim is procedurally barred because he did not exhaust this claim in state court, and it is now subject to procedural default. Specifically, Respondents argue that although Snider asserted in his direct appeal that the trial court improperly limited his cross-examination of the victim, he did not present this issue as a claim for ineffective assistance of counsel. In the State Petition, however, Snider asserted a claim of ineffective assistance of counsel based in part on his trial counsel's failure to "properly cross-examine" the victim at trial. State Record ("S.R.") 54, Ans. Ex. 1, ECF No. 13-1. Because this ground for relief was asserted in Snider's State Petition, the Court finds that Snider has sufficiently exhausted state remedies on this issue, and an analysis of procedural default is unnecessary. The Court will therefore address each of Snider's claims of ineffective assistance of counsel on the merits.

## III.    Cross Examination of the Victim

Snider argues that his trial counsel was ineffective for failing adequately to cross-examine the victim about two previous allegations of rape that she made against two other men. The Circuit Court's failure to address this claim as part of its review of the State Petition arguably implicates

9

the Court's standard of review. *See Johnson v. Williams*, 568 U.S. 289, 292–93, 303 (2013) (finding that, where the state court addresses some but not all of a petitioner's claims, there is a presumption that the omitted claim was adjudicated on the merits, but this presumption may be rebutted by evidence that the claim was inadvertently overlooked, which leads to a *de novo* review). Although it is not clear, upon a review of the record, why the Circuit Court did not address the merits of this claim, the Court need not determine whether the Circuit Court inadvertently overlooked this claim because it fails under either a *de novo* or deferential standard of review.

Before the trial began on May 4, 2016, the State moved for the exclusion of evidence that the victim had accused two other men of raping her in Baltimore County. The trial court granted the State's motion, finding that the evidence was either not relevant or was more prejudicial than probative. The trial court permitted evidence that the victim denied any sexual assault by Snider during a prior unrelated criminal investigation but excluded any reference that this investigation was related to other rape allegations.

On direct appeal, Snider argued that he was improperly prohibited from presenting a complete defense because he could not cross-examine the victim about the other two rape accusations. The Appellate Court concluded that the trial court did not abuse its discretion in excluding evidence of the prior rape accusations because there was no evidence that the accusations were false, the accusations were not relevant to the victim's credibility, and introducing such evidence created a potential for confusion of the issues.

The failure of Snider's trial counsel to cross-examine the victim about her previous rape accusations against two other men did not constitute deficient performance under *Strickland*. Where the trial court specifically prohibited Snider's trial counsel from questioning the victim about this subject matter, the failure to do so cannot be deemed deficient performance.

10

Moreover, to the extent that Snider seeks habeas relief on the same ground asserted on direct appeal, that the bar on such cross examination was improper, the Court does not find that the Appellate Court's ruling was contrary to or involved an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d). "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). However, "'[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). "[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 326. Under the applicable standard of review, the Appellate Court's determination that the trial court did not abuse its discretion in excluding testimony about the prior rape accusations based on the determination that its probative value was outweighed by unfair prejudice or confusion of the issues was not an unreasonable application of clearly established federal law. *See Richardson v. Branker*, 668 F.3d 128, 140–41 (4th Cir. 2012) (stating that under the federal habeas standard the state court decision is to "be given the benefit of the doubt" (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002))). Thus, Snider's claims based on the failure to cross-examine the victim on the prior rape allegations will be denied.

## IV.    Judge's Comment to the Jury

Snider also argues that his trial counsel was ineffective by failing to object to a statement by the trial judge made prior to jury deliberations. On May 6, 2016, after the defense rested, the

11

trial court proceeded to dismiss the two alternate jurors. The trial judge made the following statement, to which Snider believes his counsel should have objected:

> I am most appreciative for your service. I am about to dismiss you. I would send you back with Kate to get you[r] tablets, cellphones. Now, you may go about your business and never think about us again and that is okay. Or you can call me next week I will be happy to tell you how things turned out. Another option frankly that I have not offered before but I think I will offer today is that if you want to go back with Kate and get your things and wait in my office I will come back and talk to you. You don't have to do that. It is totally okay. You are like what? No. *But I just—this is an emotional matter* and I don't want to send you off without a chance to have a moment with me. So, however you feel comfortable is the route you should take. But I do thank you for your time.

5/6/2016 Trial Tr. at 83, ECF No. 16-3 (emphasis added).

Snider contends that the trial judge's statement that the trial was "emotional," *id.*, was an inappropriate expression of her opinion, reflected her bias, and denied him due process of law. At the state post-conviction hearing, Snider's trial counsel testified that he did not hear the trial judge's comment but that he would have moved for a mistrial if he had.

As to Snider's claim that the trial judge's comment reflected her opinion and bias, the Circuit Court denied this claim in its ruling on the State Petition, concluding that the trial judge gave no opinion on issues to be decided by the jury, the credibility of witnesses, the truth of any matter of fact, the guilt or innocence of the accused, the sufficiency or strength of the evidence, or whether the state had met its burden of proof. The Circuit Court found that the trial judge's comment merely recognized that the subject matter itself was emotional and thus concluded that the trial counsel was not constitutionally ineffective for failing to lodge an objection to that comment.

"'[A] fair trial in a fair tribunal is a basic requirement of due process.'" *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). In order to prevail on a claim of bias on the part of the trial judge, a defendant must show "a deep-seated

favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Given the deference owed to the Circuit Court's determination, and the high threshold for a deprivation of constitutional dimension, the Court finds that the Circuit Court's denial of Snider's ineffective assistance of counsel claim based on the failure to object to the trial judge's comment was not contrary to or an unreasonable application of federal law.

## V.   Hearsay Testimony

Snider also contends that his trial counsel was ineffective by failing to object to hearsay testimony from four trial witnesses, C.M., Sherry Majka, Detective David Maranto, and Monica Thomas, as described below.

### A.   C.M.

Snider argues that his trial counsel was ineffective because he failed to object to testimony by C.M. in which she stated that she reported the sexual abuse by Snider to her therapist and her friend, Monica Thomas. On the State Petition, the Circuit Court concluded that the testimony qualified for the hearsay exception for a "prior consistent statement" pursuant to Maryland Rule 5–802.1(b) because the statements to others were made before C.M. reported the abuse to the police, which the Circuit Court found to be the point at which any motive to fabricate arose.

### B.   Sherry Majka

Snider also argues that his trial counsel should have objected to testimony by Majka, C.M.'s manager when she worked at McDonald's. On the first day of trial, Majka testified that in December 2014, C.M. became visibly upset after seeing Snider in the drive-thru area of the restaurant. Majka also testified that C.M. told her that Snider had abused her. On the State Petition, the Circuit Court found that Snider's trial counsel had not acted in a deficient manner in failing to object to this testimony because it qualified for two hearsay exceptions under the

Maryland Rules of Evidence.  First, the testimony was a prior consistent statement under Maryland Rule 5–802.1(b).  Although Snider argued that the statement should not qualify for this exception because it did not predate C.M.'s motive to fabricate allegations, the Circuit Court rejected this argument and concluded that if there was any motive to fabricate the allegations, it arose at the time that C.M. reported the abuse to the police, which occurred in February 2015, after the statements to Majka.  The Circuit Court also found that Majka's testimony qualified for the "excited utterance" exception to the hearsay rule pursuant to Maryland Rule 5–803(b)(2) because it was made under the stress of an emotional situation.

### C.    Detective David Maranto

Snider also asserts that his trial counsel should have objected to Detective Maranto's testimony recounting how he learned about the sexual abuse from C.M.'s therapist.  On the State Petition, the Circuit Court found that the question that elicited the testimony, "And how did you come to be involved in that and how was that initiated?," was not objectionable, and in any event, the testimony that the case was referred to Detective Maranto after C.M. told her therapist about the abuse described a prior consistent statement pursuant to Maryland Rule 5–802.1(b).

Snider also argues that his trial court should have objected to the following testimony by Detective Maranto:

Q:    And, once C.M. was interviewed, what other steps, if any, did you take?

A:    Based on her statements, her allegations, we identified Kevin Snider through several computer databases.  We also—part of her testimony was that—not her testimony—pardon me.  Part of her disclosure to me was that Kevin Snider has removed her from school on several occasions and on one occasion I believe when she was around 14 had brought her home from school early and engaged in sexual abuse with her at that time.

5/5/2016 Trial Tr. at 169–70, ECF No. 16-2.  Detective Maranto further stated that based on this information, he sought a subpoena for school records to seek to corroborate this account.  The Circuit Court found that the testimony was not given in response to an objectionable question.

### D.    Monica Thomas

Snider also contends that his trial counsel was ineffective for failing to object to testimony by Thomas, C.M.'s friend, who testified that C.M. had told her that she was sexually abused by Snider.  On the State Petition, the Circuit Court concluded that because the statement predated C.M.'s report of abuse to the police, which was when any motive to fabricate arose, it qualified for the prior consistent statement hearsay exception under Maryland Rule 5–802.1(b).

### E.    Ineffective Assistance Analysis

On the State Petition, the Circuit Court concluded that trial counsel's performance was not deficient because the identified testimony of C.M., Majka, and Thomas, as well as one of the statements by Detective Maranto, qualified for the hearsay exception for prior inconsistent statements, so any objections by trial counsel would not have been successful.  Upon review, the conclusion that such testimony was admissible under this exception, including the determination that the statements occurred prior to any motive to fabricate, was substantially correct and thus was neither contrary to nor an unreasonable application of federal law.  *See Lafler v. Cooper*, 566 U.S. 156, 167 (2012) ("Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, [the petitioner] could not demonstrate an error entitling him to relief.").

Although the Circuit Court did not identify a specific hearsay exception applicable to the second of Detective Maranto's statements, the Court agrees that the question that elicited the response was not objectionable.  Even if trial counsel erred by failing to object to the response, the

15

Court finds that, even though the Circuit Court did not address issue of prejudice, Snider failed to show that any such failure resulted in prejudice under *Strickland*. *See Wiggins*, 539 U.S. at 534 (finding that courts do not apply the deferential standard in evaluating a prong of *Strickland* analysis that the state court has not reached). Here, Detective Maranto's testimony about C.M.'s report that Snider removed her from school early to engage in sexual abuse, offered to explain why he sought a subpoena for school records, was cumulative of and consistent with the lengthy and detailed testimony about the sexual abuse given by C.M. *See Henh Chu Ngo v. Holloway*, 551 F. App'x 713, 718 (4th Cir. 2014) (finding that trial counsel's failure to object to a detective's hearsay testimony was not prejudicial to the petitioner because the substance of the testimony had already been presented to the jury through other witnesses). Snider has not shown how this specific piece of corroborating testimony on a single point, if excluded, would have created a reasonable probably of a different outcome. *See Strickland*, 466 U.S. at 694. Accordingly, the Court does not find that Snider's trial counsel was constitutionally ineffective based on the failure to object to Detective Maranto's testimony.

## VI.    Lay Opinion Testimony

Snider further contends that his trial counsel should have objected to C.M.'s testimony about why she was taking certain mental health medications because it constituted improper opinion testimony. At trial, Snider's trial counsel asked C.M. whether she was taking mental health medications, and she responded that she took several medications, including Cymbalta, Celexa, and Risperdal, to cope with depression and anxiety. On redirect examination, the prosecutor had the following exchange to which trial counsel did not object:

Q:    And you were asked a couple questions about medications you take?

A:    Yes.

16

Q:      And is some of that because of what [Snider] did to you?

A:      Yes.

5/5/16 Trial Tr. at 113. On the State Petition, the Circuit Court found that Snider's counsel was not ineffective for failing to object to this testimony because he had opened the door to the testimony by asking about medications, and because C.M. had not offered a medical opinion but instead had provided a reason for taking the medication that could be admitted as a lay opinion based on her personal knowledge and experience under Maryland Rule 5–701.

The Court finds that the Circuit Court correctly found that the evidence was properly admitted. C.M. was not offering a medical opinion and instead was stating her own reason for taking the medication, which was within her personal knowledge. To the extent that it could be characterized as an opinion, the testimony was within the bounds of a lay opinion. Thus, the Court finds no ineffective assistance of counsel based on trial counsel's failure to object to this testimony.

**VII.    Other Acts Testimony**

Snider also argues that his trial counsel should have objected to testimony during direct examination, and should not have elicited testimony from Majka during cross examination, about an alleged protective order that C.M. had obtained against him. At trial, Majka testified that she told C.M. to bring to the restaurant a copy of any protective orders against Snider so that McDonald's employees could call the police if he returned. On cross examination, trial counsel asked Majka about the protective order and elicited testimony that C.M. never produced a copy of the order. Snider claims that the testimony referencing the fact that C.M. had a restraining order against him constituted testimony about a prior bad act and was thus inadmissible character evidence.

17

During the state post-conviction hearing, Snider's trial counsel testified that his trial strategy was to show that C.M. was lying, and that his approach to the protective order testimony was to advance this strategy by eliciting the fact that while she claimed to have a protective order, it never materialized. The Circuit Court credited the trial counsel's testimony and found that Snider had failed to overcome the presumption that his actions were based on a legitimate trial strategy.

"It is a cardinal tenet of the Supreme Court's ineffective assistance jurisprudence that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Meyer v. Branker*, 506 F.3d 358, 371 (4th Cir. 2007) (quoting *Strickland*, 466 U.S. at 690). The evidence at trial established that the State's case rested upon the credibility of C.M. Other than the DNA evidence, no physical evidence was introduced, and there were no other witnesses to the abuse. Accordingly, the Circuit Court's deference to trial counsel's strategy to undermine C.M.'s credibility by highlighting a possible false statement about the existence of a protective order was neither contrary to nor an unreasonable application of *Strickland*. Thus, Snider's claim that his trial counsel was ineffective based on the testimony relating to the protective order will be denied.

## VIII.   Juror No. 119

Snider also argues that his trial counsel provided ineffective assistance by failing to object to Juror No. 119, who served as an alternate juror and did not deliberate. During jury selection, Juror No. 119 stated that he was a detective at the Department of Public Safety and worked in the warrant apprehension unit. After Detective Maranto's testimony, Juror No. 119 submitted a note to the trial judge disclosing that he recognized the detective from when he first started working in the warrant apprehension unit but did not know him by name and did not recall having any

18

conversations with him. The trial judge conducted additional questioning of Juror No. 119, during which the juror stated that his recognition of Detective Maranto would not impact his ability to be fair. Neither the prosecution nor the defense asserted any objection to Juror No. 119's continued participation in the trial.

During the post-conviction hearing, Snider testified that when Juror No. 119 submitted the note to the trial judge, he recognized Juror No. 119 as a police officer on the warrant patrol and that the juror was the officer who handcuffed him when he was arrested. Snider testified that he told his trial counsel that he recognized Juror No. 119 as one of the officers who arrested him and asked him to seek to strike the juror, but his trial counsel did not do so.

In ruling on the issue, the Circuit Court noted that Snider stated in his State Petition that he recognized Juror No. 119 for the first time a week after the trial concluded, rather than during the trial, so there was no reason for his trial counsel to object to the juror during the trial on this basis. The Circuit Court also concluded that Snider could not show prejudice arising from the failure to object to Juror No. 119 because he was an alternate juror who did not deliberate.

Where the State has not submitted the State Petition as part of the record, the Court cannot easily evaluate, even under the highly deferential standard that applies, the Circuit Court's finding of fact that Snider did not recognize Juror No. 119 until one week after the trial, which was apparently based on a statement in the State Petition that conflicted with Snider's testimony at the post-conviction hearing. Nevertheless, the Court agrees with the Circuit Court's conclusion that Snider has not demonstrated prejudice from any failure to object to Juror No. 119 because that juror was an alternate who did not deliberate. Accordingly, Snider's claim that his trial counsel provided ineffective assistance by failing to object to Juror No. 119 will be denied.

19

## IX.    Failure to Investigate

Snider also contends that his trial counsel was ineffective by failing adequately to investigate the allegations against him and then to present a more robust defense. At the post-conviction hearing, Snider testified that his trial counsel should have interviewed C.M.'s therapist, interviewed his stepsons about the fact that they were not abused, investigated the two prior rape allegations by C.M. He also asserted that his trial counsel could have gathered more evidence to establish false statements by the victim, such as by showing that her claim that he followed her home from school in 2014 or 2015 using a particular vehicle was false because he no longer owned that vehicle at that time.

The Circuit Court concluded that Snider had not demonstrated prejudice because he could only speculate that the therapist would have had helpful information, and the fact that his stepsons were not abused was not relevant evidence. The Circuit Court also noted that Snider had abandoned the claim that his trial counsel failed to call certain witnesses at trial but nevertheless found that claim to be meritless because Snider's trial counsel testified at the post-conviction hearing that two of Snider's three daughters were not willing to cooperate and that he investigated all witnesses identified by Snider and considered each one.

An allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced. *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990). Here, Snider generally asserts and speculates that additional investigation would have yielded favorable results and, with the exception of possible evidence about the timing of his ownership of the vehicle, has not identified favorable evidence or testimony that would have resulted from a more thorough investigation. The limited additional facts that he identifies are not sufficient to establish a reasonable probability that the outcome of the trial would

20

have been different. *See Strickland*, 466 U.S. at 694. Accordingly, the Circuit Court's rejection of this argument was neither contrary to, nor an unreasonable application of, federal law. The Court will deny Snider's ineffective assistance of counsel claim based on the failure to investigate.

## X.     Application for a Review of the Sentence

Snider further contends that his trial counsel was ineffective when he failed to consult with Snider about, and then failed to file, an application for a sentence review by a three-judge panel pursuant to Md. Code Ann., Crim. Proc. §§ 8–102, 8–103(a). During the post-conviction hearing, Snider's trial counsel testified that he discussed the possibility of filing an application for a three-judge panel review with Snider, but his advice was to proceed straight to a direct appeal because the panel could impose a longer sentence. The Circuit Court credited trial counsel's testimony that he had, in fact, discussed the issue with Snider and determined that trial counsel's decision not to expose Snider to a higher sentence did not constitute deficient performance. Considering the deference owed to both trial counsel's strategic decision and the Circuit Court's determination on the State Petition, the Court finds that the Circuit Court's conclusion that the trial counsel's performance on this issue was not deficient was sound and was not an unreasonable application of clearly established federal law.

## XI.     Cumulative Errors

Finally, Snider contends that the cumulative errors by his trial counsel establish that he received ineffective assistance of counsel. Ineffective assistance of counsel claims must be reviewed individually rather than collectively. *Fisher v. Angelone*, 163 F.3d 835, 853 (4th Cir. 1998). Moreover, "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Id.* at 852 n.9. Because the Court has not concluded that Snider's trial counsel

provided deficient performance on any particular issue, much less on multiple issues, a cumulative error analysis is inappropriate, and the Circuit Court's rejection of this claim for the same reasons is neither contrary to nor an unreasonable application of federal law.

## XII.  Certificate of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability.  28 U.S.C. § 2253(c)(1).  The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When, as here, the Court has denied the Petition on the merits, a petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Upon a review of the record, this Court finds that Snider has not made the requisite showing.  The Court therefore declines to issue a certificate of appealability.  Snider may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  Fed. R. App. P. 22(b).

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be DENIED.  The Court will decline to issue a certificate of appealability.  A separate Order shall issue.

Date:  September 27, 2023

THEODORE D. CHUANG
United States District Judge